```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION


THE DENNY MANUFACTURING           :
COMPANY, INC.,                    :
                                  :
     Plaintiff,                   :
                                  :
vs.                               :     CIVIL ACTION 09-0214-KD-M
                                  :
DROPS & PROPS, INC., d/b/a        :
BACKDROP OUTLET a/k/a             :
BACKDROPOUTLET.COM, et al.,       :
                                  :
     Defendants.                  :
```

REPORT AND RECOMMENDATION

The Motion to Dismiss filed by Defendant Jay Gupta (Doc. 30) has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2.  Jurisdiction has been invoked in this Court under 28 U.S.C. § 1338(a & b), pursuant to the Copyright Act and the Lanham Act (Doc. 21).[1]  After consideration, it is recommended that Gupta's motion be denied.

The facts are, briefly, as follows.  Plaintiff, The Denny Manufacturing Company, Inc. (hereinafter *Denny*), manufactures "backdrops, props, and studio accessories for the photographic industry" (Doc. 21, ¶ 8).  Denny has registered its backdrops with the Copyright Office in compliance with the Copyright Act

---

[1] This pleading is the First Amended Complaint.

(Doc. 21, ¶ 11).[2] Denny asserts that Defendant Drops & Props, Inc. (hereinafter *DPI*) "has reproduced, distributed, and sold unauthorized copies of [its copyrighted works] in violation of the Copyright Act" (Doc. 21, ¶ 13); Defendant Jay Gupta is the President of DPI (Doc. 21, ¶ 4).  Plaintiff brought this action, asserting claims of copyright infringement, trademark infringement, and false designation of origin, as well as State law claims for trademark infringement and unfair competition; Denny seeks injunctive relief, impoundment, an accounting, and damages (Doc. 21).

Defendant Gupta filed this Motion to Dismiss (Doc. 30) to which Denny filed a response (Doc. 50).  Gupta filed a reply (Doc. 53) to which Denny has filed a surreply (Doc. 56).

The Court notes that there are two components to Defendant's Motion to Dismiss.  Gupta first claims that this Court has no personal jurisdiction over him; second, he asserts that Denny has not stated a claim against him.  The Court will address these arguments in the order in which they are raised.

Gupta first seeks to be dismissed from this action pursuant to Fed.R.Civ.P. 12(b)(2), claiming that the Court lacks *in personam* jurisdiction over him (Doc. 30).  To determine whether this Court enjoys personal jurisdiction over the Defendant, a

---

[2] Denny claims that there are sixteen artistic backdrops which are the subject of this action (Doc. 21, ¶ 11).  The list of these backdrops, however, numbers twenty (*id.*).

2

non-resident defendant, the Court must examine the relationship of the defendant, the forum, and the matter to be litigated. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

Alabama[3] courts ask two questions in making this determination:  (1) is it foreseeable to the defendant that he will be sued in Alabama and (2) how much contact does the defendant have with Alabama?  *Lowry v. Owens*, 621 So.2d 1262, 1265 (Ala. 1993) (*citing Keelean v. Central Bank of the South*, 544 So.2d 153, 156 (Ala. 1989), *overruled on other grounds by Professional Ins. Corp. v. Sutherland*, 700 So.2d 347 (Ala. 1997)).  It is noted, though, that "[t]he reach of personal jurisdiction of an Alabama court over nonresident defendants under Rule 4.2(a)(2), A.R.Civ.P., extends to the permissible limits of due process."  *Lowry*, 621 So.2d at 1264 (*citing Alabama Waterproofing Co. V. Hanby*, 431 So.2d 141, 145 (Ala. 1983)).  The Alabama rule states that

> [a] person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's . . . having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action.

Ala.R.Civ.P. 4.2(a)(2)(I).

---

[3]Alabama law controls.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Defendant asserts that he is a resident of California and has never been to the State of Alabama (Gupta Decl. ¶¶ 2-3).[4] Gupta has never conducted personal business—or had agents conduct business on his behalf—in Alabama; he does not own property, have any personal bank accounts, and has not signed or negotiated any contracts in Alabama (*id.* at ¶¶ 4, 6-8).  Gupta states that he is merely the president of the Defendant corporation (*id.* at ¶ 5).

In the Amended Complaint, Denny refers to Gupta and DPI, collectively, as Defendants (Doc. 21, preamble) before making the following specific assertions:

> 1.  This case is about the willful copyright infringement and trademark infringement of Denny's intellectual property and false designation of origin by the Defendants.  Denny creates, manufactures, and sells backdrops and props for photographers.  The Defendants have blatantly knocked-off certain of Denny's works, despite multiple requests that it cease and desist from doing so.  The Defendants have used a mark confusingly similar to a trademark registered by Denny.  Finally, the Defendants have used images of Denny's products to advertise and solicit sales of Backdrop Outlet's products.  The Defendants' refusal to comply with the law has left Denny no choice but to bring this action to protect its valuable intellectual property.
>
> ***
>
> 18.  The Defendants have infringed Denny's FLEXTEX mark by various acts, including selling, offering for sale, and advertising a similar backdrop product in

---

[4]Gupta's Declaration appears at Document 30.

>interstate commerce under the name and mark FAUXTEX.  Backdrop Outlet's use of FAUXTEX is without permission or authority of Denny.
>
>19.     The Defendants' use of FAUXTEX is intended to and likely to cause confusion, to cause mistake and to deceive.
>
>\*\*\*
>
>24.     The Defendants have copied, distributed, and sold unauthorized copies of the Works without authority or permission from Denny.  The Defendants' unauthorized reproduction and distribution of the Works infringes Denny's copyrights.  The Defendants' infringement has been willful, and they have refused to cease their infringement, despite Denny's repeated demands that it do so.
>
>\*\*\*
>
>32.     The Defendants have intentionally infringed Denny's FLEXTEX mark in interstate commerce in violation of section 32 of the Lanham At, 15 U.S.C. § 2224(1).
>
>\*\*\*
>
>42.     Upon information and belief, the Defendants willfully intended to trade on the quality of Denny's products or to cause deception by their use of the images of Denny's products and FAUXTEX.
>
>\*\*\*
>
>50.     Despite actual knowledge of Denny's rights, the Defendants continue their infringing behavior.  The Defendants have carried out their acts of infringement with knowledge of Denny's rights and in conscious disregard of Denny's rights.

(Doc. 21).  Plaintiff has also provided the following evidence from Gupta's deposition.

Gupta started DPI in 1990 and has been its president since incorporation (Gupta Depo., pp. 11, 17). Gupta and his wife are the only two officers and they each own fifty percent of the corporation; he has received dividends from DPI and stated that one hundred percent of his income comes from DPI (*id.* at pp. 11, 22-23, 24-25).

DPI has a bricks and mortar corporation, but it also has an e-commerce website through which people can browse and order products; Gupta is aware of the information on the site as he reviews it before it is published (*id*. at pp. 25-27). DPI has sold goods nationally, including in Alabama, as well as a small amount internationally (*id.* at pp. 30, 33).

Gupta is familiar with Denny Manufacturing as they are a competitor; he first became aware of them in 1991 at a trade show (*id.* at pp. 17-18). Gupta has seen Denny's website and catalogs (*id.* at p. 18). DPI does not go to trade shows in Alabama because it would not be competitive as that is Denny's backyard (*id.* at pp. 31-32).

DPI currently has nine employees (*id.* at pp. 33-34). Paul Radomski is the general manager who runs day-to-day operations (*id.* at pp. 29, 34, 73). Paul, who answers to Gupta, talks with Gupta daily; Gupta has the final say on how DPI is to be run (*id.* at pp. 36-37, 38). Gupta is the only person authorized to sign checks for DPI; he also signs the tax returns (*id.* at pp. 44, 45). Gupta admitted that he was the boss; though he may not use

it, he has veto power over every decision made at DPI (*id.* at pp. 50, 51-52). Gupta has the authority to take an item off DPI's website; if DPI wanted to stop selling an item, Gupta could personally make that happen (*id.* at p. 76-77).

Gupta focuses "on marketing functions, trying to come up with new advertising for the magazines, looking at the design of the website" (*id.* at p. 35). He characterizes his role as making "sure the business continues to come in" (*id.* at p. 47). Gupta is personally involved in deciding what does and does not go into the catalog (*id.* at p. 58).

Gupta acknowledged a letter dated Mary 14, 2008, along with attachments, that had been sent to him from Denny which claimed copyright ownership on items being offered for sale by DPI; Gupta turned the letter over to his attorney to have him determine the truthfulness of the letter's assertions (*id.* at pp. 60-63; *see also* Exhibit 3 to Gupta Depo.).[5] After receiving the letter, Gupta became suspicious that his vendors may be copying someone else's work; he did not contact his vendors to confirm or deny his suspicions (Gupta Depo., pp. 64-65). Gupta stated that he had reviewed a second letter, dated December 5, 2008, which DPI's attorney had received from Denny's attorneys; the second letter affirmed Plaintiff's ownership of certain works being sold by DPI and demanded that DPI stop marketing and selling those products

---

[5]The exhibit can be found at pages 48-82 of Document 50.

(*id.* at pp. 67-68; *see also* Exhibit 5 to Gupta Depo.).[6]  Gupta took no action in response to the second letter (Gupta Depo., pp. 68-70).

The Eleventh Circuit Court of Appeals has discussed the necessary showing for finding minimum contacts in a trademark case and noted that "intentional acts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).  The *Licciardello* further noted that the U.S. Supreme Court, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-77 (1984), had "emphasized that states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents." *Licciardello*, 544 F.3d at 1286.  The facts in *Licciardello*, as stated by the Appellate Court, were as follows:

> Lovelady is alleged to have committed an intentional tort against Carman-using his trademarked name and his picture on a website accessible in Florida in a manner to imply Carman's endorsement of Lovelady and his products.  The use was not negligent, but intentional.  The purpose was to make money from Carman's implied endorsement.  The unauthorized use of Carman's mark, therefore, individually targeted Carman in order to misappropriate his name and reputation for commercial gain.  These allegations satisfy the *Calder* effects test for personal

---

[6]The exhibit can be found at pages 84-121 of Document 50.

> jurisdiction-the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum. The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over Lovelady because his intentional conduct in his state of residence was calculated to cause injury to Carman in Florida. *See Calder*, 465 U.S. at 791, 104 S.Ct. 1482. Lovelady cannot now claim surprise at being haled into court here. *See id.* at 789-90, 104 S.Ct. 1482.

*Licciardello*, 544 F.3d at 1287-88.

The Court finds the factual claims against Gupta to be similar to those made against Lovelady in *Licciardello*. It is asserted that Gupta committed an intentional tort by allowing works owned by Denny to be sold through DPI; Gupta did so after having been alerted of such ownership. Gupta's actions were done in an effort to make a profit for DPI; as a fifty-percent-shareholder of DPI, Gupta took these actions for commercial gain. If the assertions are true, Plaintiff has suffered here in the forum state of Alabama, its place of incorporation and principal place of business (Complaint, ¶ 2). The Court finds that Plaintiff has met the effects test of *Calder* by showing that Gupta engaged in intentional conduct which were calculated to cause injury to Denny in Alabama.

This Court finds that Defendant Gupta has sufficient contacts with this State so that it was foreseeable that he would be sued here. This Court finds that allowing this action to

proceed against Gupta does not offend "traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Therefore, it is recommended that Defendant's Motion to Dismiss him for lack of *in personam* jurisdiction be denied (Doc. 30).

The Court will now consider Defendant's Motion as a challenge to the claims made against him.  The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[7]  While

---

[7]*Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 557-563 (2007).  The Court,

factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1950 (2009) (citing *Twombley*, 550 U.S. at 556. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, — U.S. —, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from

---

nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

conceivable to plausible[; otherwise,] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

The Court notes that Gupta, initially, did not challenge any claim in particular; rather, he protested his involvement in this action at all (Doc. 30, pp. 13-15). Though Gupta cited several cases to support his argument, those cases actually support Plaintiff's claim that it has satisfactorily stated claims against the Defendant in light of the deposition evidence already discussed with regard to the personal jurisdiction arguments.[8]

In his reply brief, Gupta more narrowly focuses his argument to the unfair competition that has been brought against him (Doc. 53, p. 8). The Court notes that in the initial Motion, Gupta referenced a single treatise, 3A FLETCHER CYC. CORP. § 1158, for the following assertion: "Although in some jurisdictions, '[o]fficers and directors of a corporation may be held liable for acts of unfair competition,' the finding of personal liability

---

[8]Though Gupta has asserted that the "deposition was not permitted in order that Denny might attempt to salvage its claims against Gupta" (Doc. 53, p. 9 n.6), this Court is not now going to turn a blind eye to the very evidence that clearly established that the Court had personal jurisdiction over him. Gupta has cited no authority that the use of this evidence now is forbidden.

hinges on an alter ego relationship, *i.e.*, where the corporation is a mere shell being used by the officer to escape liability for unfair competition" (Doc. 30, p. 18).  Gupta has again referenced the cite in a footnote in the Reply, but this provides the Court with no further instruction (Doc. 53, p. 8 n.5).  The Court finds that Gupta has neglected to point out what the law is in this jurisdiction with regard to a claim for unfair competition; the Court further notes that it is loathe to perform that service for him.

After consideration of all of the evidence of record, the Court finds that Plaintiff has articulated claims against Gupta that satisfy the dictates of *Twombley* and *Iqbal*, Defendant's assertions otherwise notwithstanding.  Therefore, it is recommended that Defendant Gupta's Motion to Dismiss should be denied in its entirety (Doc. 30).

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

   A party may object to a recommendation entered by a

    magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de</u> <u>novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    DONE this 16th day of December, 2009.


                                             <u>s/BERT W. MILLING, JR.</u>
                                             UNITED STATES MAGISTRATE JUDGE