**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THE DENNY MANUFACTURING** | ) | |
| **COMPANY, INC., an Alabama** | ) | |
| **Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 09-0214-KD-M** |
| | ) | |
| **DROPS & PROPS, INC., an Illinois** | ) | |
| **Corporation d/b/a BACKDROP OUTLET** | ) | |
| **a/k/a BACKDROPOUTLET.COM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This action is before the Court on the motion filed by plaintiff The Denny Manufacturing

Company, Inc. (Denny) to have defendants Drops & Props, Inc., and Jay Gupta (DP) held in

contempt for violating the permanent injunction (doc. 87), DP's response (doc. 89), Denny's

reply (doc. 94), DP's sur-reply (doc. 97), Denny's supplement (doc. 98), and exhibits in support.

The Court held an evidentiary hearing on March 1, 2011. Paul Sykes appeared on behalf

of plaintiff and Michael Strasavich and Ellen Matthews on behalf of defendants. Dennis E.

Variali testified as the founder and CEO of Denny and Amy Cassity testified as the COO of

Denny. John P. Young, a graphic artist for Denny, also testified. Defendant Gupta testified on

his own behalf and as President of DP. Upon consideration of the motions and exhibits and the

testimony at the hearing, and for the reasons set forth herein, the undersigned finds as follows:

> that DP is not in civil contempt of the injunction as to activities involving the
> copyrighted works identified in Exhibits 1-A and 1-B (docs. 87-2, 87-3);
>
> that DP is in civil contempt of the injunction as to activities involving some of the
> works copyrighted under the compilation copyright VA0720-064, identified in
> Exhibit 1-G to Denny's motion (doc. 87-10);

that DP is in civil contempt of the injunction as to the use of a similar trade name FauxTex or FabTex identified in Exhibit 1-E to Denny's motion (docs. 87-8 & 9, FabTex in URL and image on website); Exhibit 1-A and 1-B to Denny's reply (doc. 94-1, screen shot – FauxTex on website and Facebook), and in Exhibit A to Denny's supplement (doc. 98, advertisement in photography magazine); and

that DP is not in civil contempt of the injunction as to the use of the two images of Denny's "Small Retaining Wall & Column Set" prop and Denny's copyright protected work, the "Aladdin's Valley" backdrop identified in Exhibit 1-F to Denny's motion (doc. 87-9, same image, three locations on DP's website: photography contest (one), advertisement for wall and column prop(two)).

Accordingly, as set forth herein, the court finds that an award of damages and attorney's fees and costs is appropriate.

<u>Factual findings</u>

Since 1971, Denny has employed hand-painting artists and graphic artists to create and manufacture backdrops, props and studio accessories for photographers which Denny markets through its website, catalog, CD Rom catalog, and trade shows. Denny owns individual and compilation copyrights on certain backdrops and compilation copyrights on its catalogs. (doc. 87-1, Cassity declaration and exhibits).

DP is a business competitor of Denny. In 2008 Denny's COO Cassity discovered that DP was using, reproducing, distributing and selling copies of Denny's copyright protected works on its website, on other internet sites including social media sites, and in its catalog. Denny also believed DP was marketing a backdrop by the trade name of FauxTex which was a similar trade name to FlexTex, Denny's recorded and protected trade name. Moreover, Denny believed images of its "Small Retaining Wall & Column Set" prop and copyright protected work, the "Aladdin's Valley" backdrop were used by DP to market its own wall and column prop.[1]

---

[1] (<u>See</u> doc. 87-9, Exhibit 1-F, showing two uses of this image on DP's website).

In 2008, counsel for Denny contacted DP and asked that DP stop this practice which Denny alleged to be infringing.  Some of the activities noted by Denny were discontinued, but others were not.  Denny subsequently filed suit in this court in April 2009.  Ultimately, the parties negotiated a settlement agreement.

On August 2, 2010, a stipulated permanent injunction was entered which enjoined DP from specific future activity involving all of Denny's copyright protected works and specifically identified twenty (20) individual copyrights of single works and two compilation copyrights: VAu0-720063 and VAu0-720064 (doc. 84).   Specifically, DP was enjoined from

> imitating, reproducing, distributing, or making any other  infringing use of the works or any substantially similar likeness to them, or to other works now or hereafter protected by" certain copyright registration numbers set out in the injunction, "and any other works now or hereafter protected by any of Denny's trademarks or copyrights.

(doc. 84, p. 2-3), and

> manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any backdrop, work of art, digital reproduction or other item bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Denny's registered copyrights, including but not limited to the works identified in the injunction

(doc. 84, p. 3).  DP was also enjoined from "directly or indirectly using the name FauxTex or any other mark, word, or name similar to FlexTex which is likely to cause confusion, mistake or to deceive" (doc. 84, p. 3) and from "using images of Denny's products to advertise or solicit sales of Backdrop Outlet's products" (doc. 84, p. 3).

The injunction also required, *inter alia*, that DP not assist or aid any other business in any of the enjoined activities and provided that the restrictions applied to all websites, social media, and online stores.  DP was also required to destroy all counterfeit or infringing copies of Denny's

works, including the DP catalog available on its website and all digital images or CD collections, as well as all documents and items such as labels and signs, bearing the FauxTex mark.  An exception was made for DP's necessary business records retention. The Court retained jurisdiction to enforce the injunction. (doc. 84).

Both before and after the August 2nd injunction, in July and August 2010, a series of email communication occurred between the parties in regard to compliance with the terms of the injunction.  Before the injunction, on July 22, 2010, counsel for Denny emailed counsel for DP, a list of copyright protected backdrop works to be removed from DP's websites[2] and any other internet sites, and from DP's catalog.[3] (docs. 87-11, Sykes Affidavit, 87-12 (copy of email)). The list included the small retaining wall and column prop and Aladdin's Valley backdrop.  The email also reminded DP that use of the FauxTex mark should be discontinued.

On July 28, 2010, counsel for Denny provided by hand delivery a copy of twenty (20) works and their copyright registrations which were later specifically identified in the injunction, a CD-Rom and copyright registration for the compilation copyright VAu0-7200064 which was later specifically identified in the injunction, and five (5) works with copyright documentation which were not specifically identified in the injunction (docs. 87-11, 87-13 (copy of email)). Counsel also emailed on August 4, 2010, (doc. 87-14), August 5, 2010 (doc. 87-15), and August 10-11, 2010 (doc. 87-16), to request compliance with the injunction and  to discuss the use of the

---

[2]  DP conducted business on at least three websites – Backdropoutlet.com, studiotaxi.com and backdropexchange.com, and on social media sites such as Facebook.  Thus, DP was enjoined as to all cites and the responsibility to remove infringing works extended to all sites.

[3]  The email specified twenty (20) works protected by individual copyright, the compilation copyright for VAu0-7200064 (identified as Website PDF I), the photograph image of the small retaining wall and Aladdin's Valley backdrop, and seventeen (17) specific works protected by the compilation copyright. (docs. 87-12, 87-13, doc. 87-1, p. 7).

trade names PliTex, FauxTex and FabTex to which Denny objected.

However, as of September 21, 2010, images of Denny's copyright protected backdrops remained in DP's catalog which was still available for download on the website (doc. 87-1, p. 5-8, Cassity Affidavit, Exhibits 1-A and 1-B, Cassity hearing testimony), although the hard copies had been destroyed and DP no longer mailed the catalog to potential customers (Gupta  hearing testimony, doc. 89-1, Gupta Affidavit, ¶ 4; same, Affidavit of Office Manager Paul Radomski, doc. 89-14, p. 2-3).  Also, as of September 21, 2010, DP used the mark FauxTex on the website (doc. 87-8, Exhibit 1-E, two screen shots, Cassity hearing testimony) and in the downloadable catalog (doc. 87-5, Exhibit D, catalog, p. 00003).  DP also began to use the trade name FabTex and as of September 21, 2010, DP used the name on its website and in emails to customers (doc. 87-8, Exhibit 1-E, p. 4, 6, Cassity hearing testimony).

Cassity also stated that on October 14, 2010, after the motion for contempt was filed on September 23, 2010, she reviewed the DP websites and found the use of FauxTex in two places (doc. 94-1, Exhibit 1-A, screen shots), and on October 28, 2010, she found an image advertising FauxTex on DP's Facebook page (id., Exhibit 1-B).  Denny supplemented its motion for contempt with a copy of DP's advertisement in the November and December 2010 issues of Professional Photographer magazine which included the trade name FauxTex (doc. 98).

Cassity also testified that the day before the evidentiary hearing, she checked DP's Facebook page and found older advertisements showing copies of works subject to the injunction.  She also found FauxTex, in a header on the DP website. (Cassity hearing testimony).

The President of DP, Jay Gupta, stated that immediately after the injunction was entered, DP's employees were instructed to comply with the injunction.  Specifically, DP destroyed all physical copies of its catalogs, ceased mailing or delivery of hard copies, and did not sell any of

the backdrops identified in the email sent by counsel for Denny (doc. 89-1, Gupta Affidavit, ¶ 4; same, Radomski Affidavit, doc. 89-14, p. 2-3).

By affidavit, DP's Office Manager Paul Radomski stated that the failure to disable the ability to download the DP catalog was an inadvertent and unintentional oversight and the feature was disabled on October 7, 2010 by an IT professional (doc. 89-14, p. 2). At the hearing, Gupta testified that he had a web-designer/manager upon which he relied to remove all images or references on DP websites and other internet sites and that after Gupta became aware of the ability to download the catalogs, the web manager disabled the function (Gupta, hearing testimony). By affidavit, Gupta stated that to his "knowledge Denny never identified either the ability to download the catalog or any of the images on Exhibit 1-G as issues" and that "[h]ad such issues been raised" DP "would have attempted to resolve them promptly" (doc. 89-1, p. 7).

Gupta testified that DP uses a computer program called "Mail Order Manager" and that all backdrop images identified in the injunction were promptly marked as no longer available or not for sale (Gupta hearing testimony). Gupta also testified that DP employees were made aware by way of the Mail Order Manager that certain images were not for sale (Gupta hearing testimony; <u>see</u> Radomski Affidavits, doc. 89-14, p. 3, stating that orders "would not go through"; 97-1, p. 4-5, orders would show as "error").

Gupta testified at the hearing that his web manager could search the text on the websites for names like FauxTex or FabTex and remove the text, but where these names were incorporated into an image, a text search would not find them. (Gupta hearing testimony, <u>see</u> <u>also</u> Radomski affidavit doc. 97-1, p. 3-4). Moreover, DP's employees performed manual searches of the DP websites and other internet sites including social media sites to remove these images. (<u>Id</u>.). However, Gupta did admit that he personally had done very little monitoring or reviewing

of DP websites or other internet sites (Gupta hearing testimony).   By affidavit, Radomski stated

that since October 14, 2010, he has reviewed the DP website and other internet sites and believed

that all instances of FauxTex, either in text or in images, have been removed (doc. 97-2, p. 2-4).

Regarding the images identified in Denny's Exhibit 1-G which were available on DP's

website, Gupta believed that he had obtained the images from third party vendors[4] who had the

right to license him to sell their products (Gupta trial testimony).   However, Gupta testified that

he did not personally compare the images with those of identified by Denny as copyrighted

before offering them for sale (Id.).   Radomski, by affidavit stated that he too believed that the

third party vendors had authority to permit the use of the images and also that only one allegedly

infringing image had actually been sold by DP since the injunction was entered (doc. 89-14,

Radomski affidavit, p. 6).   Radomski also testified that DP had discontinued all items but noted

that a majority of the works had been offered for sale by DP as early as 2004 and that other items

were offered by catalog in 2004 (doc. 97-1, Radomski  Affidavit, p. 6, explaining that DP

published a new sales catalog approximately every two years).

Ultimately, on October 19, 2010, DP emailed its employees and instructed them to

manually review the website for backdropoutlet.com for the use of the word FauxTex or for

copies of any of Denny's backdrops (doc. 97-2, Exhibit A-1 to Radomski Affidavit, doc. 97-1).

The email states as follows:

---

[4] The third party vendors were Sun Image and Huachang Photos.  DP received seven
images from Sun Image in August 2010 (doc. 89-1, p. 3, Gupta affidavit).  Because the images
were high resolution image files, Gupta believed that Sun Image was a legitimate source. (Id. p.
3-4).  Gupta stated that other images were obtained from Huachang Photos, and that DP did not
develop the images and thus DP did not copy images of Denny products (Id. p. 5). Gupta stated
that two images (soccer ball wall and white Christmas tree) were obtained from two other
sources  (Id.)

During your down time – we would like everyone to review the website www.backdropoutlet.com  repot to Paul or Jay if you find

1. Misspellings

2. The word FAUX TEX in text or image

3.  Any backdrop shown by Denny MFG or another competitor.

4. Missing or inaccurate descriptions.

This will be an ongoing task we expect performed daily.  If you find any of the above report it immediately with specificity, if possible include a screen shot if emailing detail.

(doc. 97-2).

As to the photography magazine advertisement, Gupta testified that the ad was purchased in the past but since the alleged use of the similar trade name was brought to DP's attention, DP has discontinued the part of the ad identifying FauxTex as a product for sale (Gupta, trial testimony).  Gupta testified the ad appeared in January, but would not appear in future issues.

<u>Statement of the Law – Civil Contempt</u>

The Court of Appeals for the Eleventh Circuit has set forth the following guidance in regard to the applicable law when a civil contempt motion is before the Court:

The party seeking an order of contempt bears the initial burden of demonstrating by clear and convincing evidence that the alleged contemnor has violated a valid court order. <u>Howard Johnson, Inc. v. Khimani</u>, 892 F.2d 1512, 1516 (11th Cir. 1990). Once the party seeking the contempt order makes out a prima facie case, "the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability."<u>Id</u>. (quotation marks and citation omitted). To satisfy that burden, the party facing possible contempt sanctions must offer evidence supporting his claim. <u>Citronelle-Mobile Gathering, Inc. v. Watkins</u>, 943 F.2d 1297, 1301 (11th Cir.1991) (quotation marks and citation omitted). A party subject to an order must show that he has "made in good faith all reasonable efforts to comply." <u>Id</u>. (quotation marks and citation omitted); <u>see also Combs v. Ryan's Coal Co.</u>, 785 F.2d 970, 984 (11th Cir. 1986)

8

(discussing burden of proof and shifting burden of production in civil contempt proceedings).

S.E.C. v. Pension Fund of America, L.C., 396 Fed Appx. 577, 582 (11th Cir. 2010).

"A finding of civil contempt must be based on clear and convincing evidence that a court order was violated." This standard is more exacting than the preponderance of the evidence standard, but does not require proof beyond a reasonable doubt.

Tom James Co. v. Morgan, 141 Fed.Appx. 894, 897 (11th Cir. 2005) (citations omitted).

"[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)

Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush, 261 F.3d 1037, 1047 (11th Cir. 2001).

Statement of the law - Sanctions

Civil contempt sanctions "may serve to either (1) coerce the contemnor to comply with a court order, or (2) compensate a party for losses suffered as a result of the contemnor's act." Federal Trade Com'n v. Leshin, 2011 WL 617500, 24 -25  (S. D. Fla. February 15, 2011) citing Sheet Metal Workers Local 441, Health & Welfare Fund v. Unatank Corp., Inc., 2008 WL 2163915, 2 (S.D.Ala., May 19, 2008), Coercive sanctions include such sanctions as a daily fine until compliance.  Sheet Metal Workers Local 441, 2008 WL 2163915 at 2, or incarceration. Leshin, 2011 WL 617500 at *25  (incarceration delayed to allow compliance with the court order to purge the contemnor of contempt).  A coercive fine "is paid into the court registry, not to the complainant" and "the court 'must consider the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction bringing about the result desired.'"  In re Chase & Sanborn Corp., 872 F.2d 397, 401 (11th Cir. 1989) (citation omitted). However, the sanction "imposed to coerce the contemnor to comply with the

court's order,[]  may not be so excessive as to be punitive in nature." <u>Citronelle-Mobile</u>
<u>Gathering, Inc. v. Watkins</u>, 943 F.2d 1297, 1304 (11th Cir. 1991).

Generally "[w]here compensation is intended, ... [s]uch fine must of course be based
upon evidence of complainant's actual loss ..." <u>United States v. United Mine Workers of</u>
<u>America</u>, 330 U.S. 258, 304, 67 S.Ct. 677 (1947) (footnote omitted).  However, "[i]n the civil
contempt context the district court's discretion in imposing non-coercive sanctions is particularly
broad and only limited by the requirement that they be compensatory." <u>Howard Johnson Co.,</u>
<u>Inc. v. Khimani</u>, 892 F.2d 1512, 1521 (11th Cir. 1990) (citations omitted) (applying the Lanham
Act to determine an appropriate non-coercive compensatory sanction). "District courts are
afforded wide discretion in fashioning an equitable remedy for civil contempt." <u>McGregor v.</u>
<u>Chierico</u>, 206 F.3d 1378, 1385 n. 5 (11th Cir.2000) (citation omitted) (finding that "[f]ederal
courts have used their inherent equitable power to justify the use of non-injunctive equitable
sanctions as permissible remedies under section 13(b)" of the Federal Trade Commission Act
and the consumer remedies therein were instructive to determining a remedy).

<u>Analysis</u>

Denny's argument is composed of three areas of alleged violations:  1) Continuing to
offer for sale or to use backdrops which are copyright protected works, 2) using the images of
Denny's "Small Retaining Wall & Column Set" prop and "Aladdin's Valley" backdrop to
market DP's wall and column prop, and 3) using the trade name FauxTex or FabTex.

<u>Copyright protected works</u>

As to the copyright protected backdrops, Denny outlines three categories of infringement:
1) Works individually copyrighted and specifically identified in the injunction which were
displayed in DP's downloadable catalog (doc. 87-2, Exhibit 1-A),  2) Works subject to the

10

compilation copyright VAu0-720064[5] which were displayed in DP's downloadable catalog (doc. 87-3, Exhibit 1-B),  and 3) works subject to the compilation copyright VAu0-720064 (and new works copyrighted by Denny) which were displayed on the website (doc. 87-10, Exhibit 1-G)

The works in Exhibit 1-A and 1-B (doc. 87)

The parties do not challenge the validity of the stipulated injunction.  Also, Denny has presented undisputed evidence that as of September 21, 2010, after the injunction was entered on August 2, 2010, copies of Denny's copyright protected backdrops remained in the downloadable version of DP's catalog which was still available on the website (doc. 87-1, p. 5-8, Cassity Affidavit, Exhibits 1-A and 1-B, Cassity hearing testimony).  Thus Denny has met its burden of showing by clear and convincing evidence that DP violated the injunction and has made its prima facie case of civil contempt.

Thus, the burden of production shifts to DP to show a "present inability to comply that goes 'beyond a mere assertion of inability....' " Howard Johnson Co., Inc. v. Khimani,  892 F.2d 1512, 1516 (11th Cir. 1990) (citations omitted).  The "focus . . . is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.  Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." Id.

DP argues that they made a good faith effort at compliance and points to the fact that the hard copies had been destroyed and DP no longer mailed the catalog to potential customers. Also the images were not available to buy on-line because DP marked on its Mail Order Manager

_____

[5]  A copy of the compilation copyright registration and the works protected are found at Doc. 87-4, Exhibit 1-C.

program that the images identified in the injunction and found in the downloadable catalog were not available for sale. (Gupta hearing testimony, doc. 89-1, Gupta Affidavit, ¶ 4; same, Radomski Affidavit, doc. 89-14, p. 2-3). DP also states that the download was disabled on October 7, 2010, after the injunction was entered and after the motion for contempt was filed. (doc. 89-14, p. 2, Radomski Affidavit).

The Court finds that DP met its burden to show that it substantially complied with the injunction and made in good faith all reasonable efforts to comply in regard to the copyrighted works specifically identified in Exhibit 1-A and 1-B, and therefore, is not in contempt of the injunction as to those images. The evidence shows that DP removed the infringing images from DP's websites and other internet sites promptly when notified by the email July 28, 2010. Additionally, before the motion for contempt was filed, Gupta used the Mail Order Manager computer program to indicate that any sale of the Denny backdrops listed in Exhibit 1-A and 1-B, would be blocked by a signal to DP employees that the backdrop was no longer available. Although Gupta and Radomski admitted that DP did not disable the download for its catalog until October 7, 2010, DP has shown that this failure was inadvertent and unintentional and corrected when brought to DP's attention.

The works identified in Exhibit 1-G

The Court has determined that DP's failure to disable the ability to download the DP catalog was excused by DP's otherwise substantial compliance with the injunction in regard to the images of works in Exhibit 1-A and 1-B. Thus, as to the works identified in Exhibit 1-G, the Court finds that DP did not violate the injunction and is not in contempt, as to these works to the extent they too were in the DP catalog.

However, DP was enjoined from "engaging in any other activity constituting an

infringement of any of Denny's registered copyrights." (doc. 84, p. 3).  In that regard, the parties do not dispute that Denny owns a valid compilation copyright in the copies identified in copyright VAu720-064 (October 2006) and TX 7-119-065 (the 2010 copyright, doc. 87-10, Exhibit 1-G, p. 00051-52).   The injunction also enjoined DP from "imitating, reproducing, distributing, or making any other infringing use of the works or any substantially similar likeness to them, or to other works now or hereafter protected" by copyright registration (doc. 84, p. 2-3), DP was also enjoined from activities involving "any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Denny's" copyright protected works (doc. 84, p. 3).

Denny has provided the Court with a list of copyright protected works which it believes DP has infringed (doc. 87-1, Exhibit G).[6]  Of these works, fifteen (15) are alleged to be protected by the VAu-720064 copyright obtained in October 2006 (doc. 87-1, p. 11-12).[7]  Two works are alleged to be protected in copyright registration TX7-119-065 obtained in February 2010 (Line Drive CP 6106 and OM9685-TM08 (pastel color swaths) doc. 87-10, p. 55, 57).[8]  Denny argues that DP has violated the injunction because the backdrop copies are substantially similar or strikingly similar to the Denny backdrops.

DP does not dispute that the images identified in Exhibit 1-G were displayed on their website.  Rather they argue that either the images were obtained from a third-party and thus there was not an intentional infringement or the images are not infringing.

---

[6]  At the hearing and in the reply, Denny relinquished any claim for contempt for violation of the injunction as to twelve (12) works identified in Exhibit 1-G: Miro, the ten Tuft images, and License Plates.

[7]  Holiday Dreams appears to be protected by two copyright registration: TX-7-119-065 obtained in February 2010 and VAu-720064  doc. 97-4, p. 5, doc. 87-4, p. 33).

[8] At the hearing, the parties indicated that all of the images in Exhibit 1-G were protected by the VAu0-720064 copyright.

As to whether the copies appearing on DP's website are infringing images, the Court must determine whether DP's copy "is substantially similar to [Denny's] work with regard to its protected elements " i.e., Denny's expression of an idea, but not as to facts, ideas, or *scenes a faire* elements which are not protected.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000); Corwin v. Walt Disney Co., 475 F.3d 1239, 1251 (11th Cir. 2007).  Substantial similarity also may be found "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Oravec v. Sunny Isles Luxury Ventures, L. C., 527 F.3d 1218, 1223 (11th Cir. 2008) (quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir.1982)).  Therefore, to determine violation of the injunction, and consequently infringement, the Court must determine "both whether the similarities between the works are substantial from the point of view of the lay [observer] and whether those similarities involve copyrightable material." Herzog v. Castle Rock Entm't., 193 F.3d 1241, 1248 (11th Cir. 1999).

Upon consideration of the factors discussed herein and comparison of Denny's works with the DP's copies, the Court finds that the following copies are substantially similar from the viewpoint of the average lay observer and involve copyrightable material:

Classic Bookcase CP 111

Ship's Bow CP 2113

Soccer CP 6020

Baseball CP 206

Pitcher's Mound CP 209[9]

---

[9]  DP asserts that as to the images in Exhibit 1-G, Pitcher's Mound is the only image it has sold. The sales price was $111.75 (doc. 89-14, p. 6)

14

Soccer USA CP 909

Touchdown CP 910

(doc. 87, p. 18).[10]   Moreover, the copyright protecting these images was specifically referenced in the injunction and images of these works had been provided to DP on a CD Rom.  Thus, it is determined by clear and convincing evidence that DP has violated the injunction.  Moreover, DP has failed to show that they made in good faith all reasonable efforts to comply with the injunction as it relates to the images found in Exhibit 1-G.

The "Small Retaining Wall & Column Set" prop and "Aladdin's Valley" backdrop

DP was enjoined from "using images of Denny's products to advertise or solicit sales of Backdrop Outlet's products" (doc. 84, p. 3).  However, after the injunction, two images of a prop and backdrop remained on DP's website (doc. 87-9, Exhibit 1-F).  Denny argues that DP used the image of Denny's prop and backdrop to advertise DP's own prop.

DP argues that the photograph was submitted by photographer Becca Nae for a DP monthly photograph contest (doc. 89-14, Radomski Affidavit, p. 4-5, and Ex. B, e-mail from Nae), and that DP removed the main image the product advertisement page for its prop after the injunction was entered but inadvertently failed to remove one image from the page showing the photography contest entry and one image from the product page.  The latter images were removed on October 4, 2010.  DP also argues that there is no clear and convincing proof that the photograph of this prop and backdrop violated the injunction because the photographer stated that the prop was not Denny's but was purchased from DP.  DP also states that the photograph

---

[10]   Because the copies which have been found to violate copyright protection are subject to protection under Denny's compilation copyrights, the Court need only find infringement as to one image in the compilation in order to find that DP has violated the injunction.  The Court makes no finding as to whether the remaining images listed in Exhibit G violated the injunction.

was not used to advertise or solicit a sale of the Denny backdrop but only to show the DP prop.

The Court finds that DP has met its burden to show that it made in good faith all reasonable efforts in to comply in regard to the alleged use of the prop and backdrop, and therefore, is not in contempt of the injunction. The evidence shows that DP promptly removed the main image from the DP product page and promptly removed the two images when notified.

The continued use of FauxTex and the use of FabTex

DP was enjoined from "directly or indirectly using the name FauxTex or any other mark, word, or name similar to FlexTex which is likely to cause confusion, mistake or to deceive" (doc. 84, p. 3). Denny argues that after the injunction DP continued to use the trade name FauxTex and then began to use the name FabTex, which Denny believed was confusingly similar to Flextex, Denny's trade name for a flexible, textured backdrop. Denny argues that even though DP removed FauxTex from its website after Denny has pointed out the infraction, one instance of FauxTex was found on DP's Facebook page. Denny also argues that the change from FauxTex to FabTex and then to ProCast, shows only a dilatory and grudging effort to comply and not a good faith attempt. In the supplemental motion, Denny provides evidence that DP failed to discontinue an advertisement in Professional Photographer magazine which contained FauxTex again until after brought to its attention by Denny.

DP argues that it ceased use of FauxTex and changed to FabTex, but based on concerns of similarity expressed by Denny, DP began to use ProCast on October 4, 2010. DP argues that it overlooked one use of FauxTex on Facebook which has been removed. DP also argues that the use of FabTex is not confusingly similar and not a violation of the injunction. DP also argues that Denny has not shown any actual confusion.

The Court finds by clear and convincing evidence that DP violated the injunction by

using the name FauxTex and FabTex.  The Court also finds that DP did not make all reasonable efforts in good faith to comply with the injunction and is in contempt.  The testimony and affidavits show that DP removed the images containing FauxTex and removed text references to FauxTex and FabTex but largely so after being repeatedly prompted by Denny, thus again leaving Denny to monitor DP's website and other internet sites.  Moreover, the evidence indicates that at the time of the hearing, DP still maintained at least one use of the trade mark FabTex on its website and that the trade name FauxTex appeared in an image in one location although not in the text of the website.

<u>Sanctions</u>

In fashioning an equitable remedy to compensate Denny for DP's violation of the injunction, the Court adopts as a guideline, the statutory damages provision under the Copyright Act.[11]  Under the Act, a court may award "statutory damages ... in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).  But if Denny proves that DP's "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 501(c)(2).

There is no doubt that DP was negligent and not diligent in failing to comply with the injunction until prompted by Denny as discussed herein and in regard to the use of FauxTex and FabTex.  The evidence also shows that as to some of the infringing images, the SunImage sports scenes, DP communicated with the third party vendor <u>after</u> the injunction had been entered and <u>after</u> it had received the CD Rom containing all of DP's protected works.  Although Gupta stated that he relied upon the apparent authority of SunImage to license DP to sell the backdrops, had

---

[11] The Court notes that there are damage provisions under the Lanham Act which could also serve as a guideline.

Gupta reviewed the images submitted by Denny, he would have found that Denny had copyrighted those images in 2006.

Gupta also testified that he did not want to pay overtime for his employees to monitor the websites for use of the word FauxTex or any copy of Denny's backdrops.  Thus, he failed to make compliance a priority.  However, although Gupta took a cavalier attitude toward complying with the injunction, his conduct did not reach the level of willfulness.

Denny presented no direct evidence of actual loss or damages but did present testimony that DP's sale and distribution of its products had damaged Denny's reputation or "goodwill" because potential buyers would question why they could purchase the same item for half-price from another distributor.  Accordingly, the Court finds that Denny is due an equitable remedy to compensate it for DP's contempt of the injunction and awards compensatory damages in the amount of $10,000.00.

Attorney's fees

Because the Court has found that DP is in civil contempt, the Court awards Denny reasonable attorney's fees for bringing this motion.  Denny should submit on or before  **April 7, 2011**, sufficient evidentiary support for the Court to determine both the reasonableness of the proffered hourly rate and whether the hours expended were reasonable.  DP shall submit any response on or before **April 21, 2011**.  The parties are reminded that the Southern District of Alabama is the locale for purposes of determination of reasonable attorney's fees.

DONE and ORDERED this 17th day of March, 2010.


**s / Kristi K DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

18