IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE DENNY MANUFACTURING COMPANY, INC., an Alabama Corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 09-0214-KD-M ) |
| DROPS & PROPS, INC., an Illinois Corporation d/b/a BACKDROP OUTLET a/k/a BACKDROPOUTLET.COM, and JAY GUPTA, an individual, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

This action is before the Court on the brief in support of attorneys' fees filed by plaintiff The Denny Manufacturing Company, Inc., (Denny) (doc. 107) and defendants Drop & Props, Inc and Jay Gupta's response (collectively DP) (doc. 108 ). Upon consideration, and for the reasons set forth herein, Denny's request for a reasonable attorneys' fees, costs and expenses is GRANTED and Denny is awarded a reasonable attorneys' fee in the total amount of $34,934.50, and costs and expenses in the amount of $3,472.14, for a total award of $38,406.64.

Background

In 2008, counsel for Denny contacted DP and asked that DP stop using images of many of Denny's copyright protected works and works subject to trade name or trademark protection, on DP's websites or other social media cites. In general, Denny asserted that DP either offered for sale its own works or works purchased from third parties which infringed Denny's copyrights or trade name protection, or used images of Denny's works to market DP's own products. DP stopped some practices, but not all. Denny filed suit in this Court in April 2009 and the parties negotiated a settlement agreement.

On August 2, 2010, a stipulated permanent injunction was entered which enjoined DP from specific future activity involving all of Denny's copyright and trademark protected works and specifically identified twenty (20) individual copyrights of single works and two compilation copyrights: VAu0-720063 and VAu0-720064 (doc. 84). Specifically, DP was enjoined from

> imitating, reproducing, distributing, or making any other infringing use of the works or any substantially similar likeness to them, or to other works now or hereafter protected by" certain copyright registration numbers set out in the injunction, "and any other works now or hereafter protected by any of Denny's trademarks or copyrights.

(doc. 84, p. 2-3), and

> manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any backdrop, work of art, digital reproduction or other item bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Denny's registered copyrights, including but not limited to the works identified in the injunction

(doc. 84, p. 3). DP was also enjoined from "directly or indirectly using the name FauxTex or any other mark, word, or name similar to FlexTex which is likely to cause confusion, mistake or to deceive" (doc. 84, p. 3) and from "using images of Denny's products to advertise or solicit sales of Backdrop Outlet's products" (doc. 84, p. 3).

The injunction also required, *inter alia*, that DP not assist or aid any other business in any of the enjoined activities and provided that the restrictions applied to all websites, social media, and online stores. DP was also required to destroy all counterfeit or infringing copies of Denny's works, including the DP catalog available on its website and all digital images or CD collections, as well as all documents and items such as labels and signs, bearing the FauxTex mark. An exception was made for DP's necessary business records retention. The Court retained jurisdiction to enforce the injunction. (doc. 84).

Both before and after the injunction was entered, the parties communicated in regard to compliance with these agreed terms in the Court's order. Denny's attorneys contacted DP on many

occasions over several months after Denny's officers continued to find DP's use of images of protected works on DP's website, downloadable catalog, various electronic media cites, and magazine advertisements which violated the injunction. Ultimately, Denny filed a motion for contempt and sanctions alleging that DP was not in compliance with the injunction. Denny sought enforcement of the injunction, damages in the amount of $1.3 million, and attorneys' fees and costs for the motion.

In regard to the copyright protected works, the Court found that DP was not in contempt of the injunction as to works identified in Exhibit 1-A and 1-B and Exhibit 1-G to the extent the works from 1-G were in the downloadable catalog, but was in contempt as to certain works identified in the injunction and certain new works identified in 1-G, which were displayed on the DP website or other electronic media. The Court found that DP was not in contempt as to the alleged use of images of Denny's "Small Retaining Wall & Column Set" prop and "Aladdin's Valley" backdrop to market DP's wall and column prop. The Court found that DP was in contempt of the injunction by using the trade name FauxTex or FabTex. Denny withdrew its claim as to some works identified in the motion for contempt.

The Court determined that Denny was due an equitable remedy to compensate it for DP's contempt of the injunction and awarded compensatory damages in the amount of $10,000.00. The Court also awarded Denny a reasonable attorneys' fee and costs for bringing the motion. Denny has now filed its motion for attorneys' fee and costs and DP has filed its response.

Reasonable attorneys' fee

"[I]n a civil contempt proceeding" attorney's fees "are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." *Abbott Laboratories v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) citing *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 458 (11th Cir.1984). To assess the reasonableness of an attorneys' fee request, courts

generally apply the "lodestar" method - multiplying the hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (the lodestar "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area"); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (starting point for determining a "reasonable" fee is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

The party requesting attorney's fees has the burden of establishing the reasonableness of both the hourly rate and number of hours expended. *Hensley*, 461 U.S. at 433; *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999). Also, the court may use its own "knowledge and expertise" to determine the reasonableness of the requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

As a reasonable and customary attorney's fee in this District, Denny seeks the following amount:

| | | | |
|---|---|---|---|
| Paul Sykes | $350.00 (2010)  $375.00 (2011) x 103.0 hours | | $36,825.00[1] |
| Brian Vines | $220.00 | x 56.75 | 12,485.00 |
| And paralegal fees: | | | |
| Koni McBride | $185.00 | x 13.50 | 2,497.50 |
| Total | | | $51,807.50 |

Denny argues that the following factors set forth in *Johnson v. Georgia Highway, Exp., Inc., 488 F 2d 715, 717-20 (5th Cir. 1974),* weigh in favor of awarding the fees requested: the time and labor required; novelty and difficulty of the questions; skill requisite to perform the legal

---

[1] In the motion, Sykes' hours are not separated as to how many hours were charged at $350.00 or $375.00.

4

services; customary fee; amount involved and results obtained; experience, reputation and ability of the attorneys; and awards in similar cases.

Overall, Denny argues that these fees are reasonable because the contempt motion involved complex and novel legal issues involving both copyright and trademark law applicable to a large number of protected works as well as the law of civil contempt and damages and required a great deal of time on the part of Denny's counsel. Denny also argues that because of this complexity, representation by counsel with skill, knowledge, and experience in intellectual property law was required. Denny points out that to prove DP's violation of the injunction and contempt by infringing the copyrights and trademark required substantial briefing which rendered the contempt motion more like a motion for summary judgment. Denny also argues that DP's continued violations of the injunction after Denny's identification of infringing activities and numerous requests to stop, contributed to the hours expended by counsel.

Reasonable hourly rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96, 104 S.Ct. 1541, 1547 n. 11).

Denny relies upon the affidavit of lead counsel Sykes to provide evidence of a reasonable hourly rate (doc. 107, Exhibit 1). Sykes states that Denny was invoiced the amount of $350.00 per hour in 2010 and $375.00 per hour in 2011 for his legal services as senior counsel, $220.00 per hour for the legal services of associate Vines, and $185.00 per hour for the legal services of paralegal McBride. Denny argues that these hourly rates are reasonable in this case because of the novelty, complexity, and difficulty of the copyright and trademark law issues involved; the skill requisite to perform the legal work in these areas of law as well as the skill necessary to prosecute a motion for

5

contempt; and that there is no local market rate for attorneys with comparable special knowledge, experience and reputation to that of Sykes, and therefore an hourly rate on a statewide or regional level should be awarded. Denny also argues that the hourly rates are reasonable because of McBride's experience as a paralegal for eighteen years and, although Vines was a two year associate, he was Order of the Coif, served on the Law Review of his law school, and clerked for an Eleventh Circuit Judge.

Denny also relies upon the affidavit of David Quittmeyer, an intellectual property attorney who practices in the Southern District of Alabama and familiar with the customary hourly rates in this District (doc. 107, Exhibit 2). Quittmeyer testified in support of the reasonableness of the hourly rates requested under the facts of this intellectual property litigation. Quittmeyer also testified that although there were intellectual property attorneys practicing in the Southern District, he had had occasion to refer cases to intellectual property attorneys outside the district.

DP argues that the prevailing market hourly rate in the Southern District of Alabama is the reasonable hourly rate and that Denny could have retained intellectual property counsel in this District. DP also argues that in determining a reasonable hourly rate based on the *Johnson* factors,[2] specifically time and labor, novelty and difficulty of the issues, and skill, the Court should recall that this was a motion for contempt which "could have been handled by any competent litigator" and that the intellectual property issues presented were not complex or difficult. DP also argues that Denny has not provided any evidence of rates actually billed and paid in similar trademark and copyright injunction cases. DP also argues that the best evidence of a reasonable hourly rate is the Court's prior decisions and based thereon, DP estimates that a reasonable hourly rate for Sykes is no

---

[2] DP points out that in *Norman*, the Eleventh Circuit explained that the lodestar analysis "presumptively includes all twelve of the [*Johnson*] factors, [] except on rare occasions the factor of results obtained and, perhaps enhancement for contingency." *Norman*, 836 F. 2d at 1298-1299 (doc. 108, n. 1). DP also points out that several of the *Johnson* factors were neutral.

more than $250.00, for Vines is no more than $150.00 per hour, and for McBride is no more than $85.00 per hour.

Upon consideration of the affidavits and the relevant factors set forth, the Court finds that the hourly rates requested for Sykes, Vines, and McBride exceed the hourly rate previously found reasonable for attorneys of comparable skill and experience in their respective areas of expertise and comparable years of practice. This Court has previously awarded attorneys with skill and experience comparable to Sykes, an hourly rate between $225.00 and $250.00 per hour, attorneys with skill and experience comparable to Vines an hourly rate $150.00 and $175.00, and comparable paralegals an hourly rate of $75.00 to $100.00.

Therefore, relying upon its own expertise as to the reasonable hourly rates in this market and review of prior hourly rate awards, the Court finds that a reasonable hourly rate for the work performed by Sykes is $250.00. Although Sykes has not practiced for as many years as the attorneys for which this Court has generally awarded $250.00, Sykes has provided evidence of his skill and expertise in the area of intellectual property law including his appointment as Special Master and court-appointed expert to U.S. District Judge David Proctor in the Northern District of Alabama. *See Smith v. First Continental Mortgage, Inc.*, Civil Action No. 09-0381-KD-N (S.D.Ala., Nov. 1, 2010) (Doc. 93) (awarding $250.00 as a reasonable hourly rate for an attorney with twenty-two years of experience who was a founding partner in his firm); *Dempsey v. Palisades Collection, Inc.*, 2010 WL 923473, at *3 (S.D.Ala., Mar. 11, 2010) (slip op) (awarding $250 as a reasonable hourly rate for an attorney with over nineteen years of experience); *Mitchell Co. v. Campus*, slip op., 2009 WL 2567889 at *1 & *17-18 (S.D.Ala. Aug. 18, 2009) (finding $275.00 was a reasonable rate for an attorney with approximately 34 years of experience); *Wells Fargo Bank, N.A. v. Williamson,* 2011 WL 382799, 4 (S.D.Ala., Jan. 3, 2011) (awarding $225.00 as a reasonable hourly rate for an attorney with ten years of experience).

The Court further finds that $150.00 is a reasonable hourly rate for the work performed by Vines. *See Adams v. Austal, U.S.A., L.L.C.*, 2010 WL 2496396, 6 (S.D. Ala. June 16, 2010) (awarding $150.00 per hour for an associate with three years experience); *Gulf Coast Asphalt Co., L.L.C. v. Chevron U.S.A., Inc.*, 2011 WL 612737, 3 -4 (S.D.Ala., Feb. 11, 2011) (awarding $145.00 for an associate with two years experience); *cf. Williamson*, 2011 WL 382799 at 4 (awarding $150 per hour for associates' time when their expertise is "indeterminate.").

The Court further finds that $75.00 is a reasonable hourly rate for the work performed by McBride. *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, 9 (S.D. Ala., April 21, 2011) (DuBose, J.) (slip op) (awarding $75.00 per hour for paralegal fees); *Williamson*, 2011 WL 382799 at 5 (same).

<u>Reasonable hours expended</u>

"The next step in the attorney's fee analysis is to determine whether the hours billed were reasonable." *Norman*, 836 F.2d at 1301. To do so, the Court must exclude hours which are "excessive, redundant[3] or otherwise unnecessary". *Id.*, citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40. As explained in *Norman*, the Supreme Court calls upon "fee applicants to exercise 'billing judgment'" and that "[t]his must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *Id*. (italics in original). However, "[i]n the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Id*.

Denny relies upon the affidavit of lead counsel Sykes and the attached billing statements showing the hours expended and the work performed (doc. 107, Exhibit 1). In this affidavit, Sykes

---

[3] The circuit court in *Norman* stated that "[r]edundant hours generally occur where more than one attorney represents a client" and "they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id*. at 1301 -1302.

8

states that the fee statements begin with the entry of work related to the August 2, 2010 injunction and that unrelated work entries have been redacted and not counted, or not included. Sykes states that the remainder of the entries are for work that was reasonably necessary to the contempt motion.

Denny also relies upon Quittmeyer's affidavit, (doc. 107, Exhibit 2), as support of the reasonableness of the time expended and work performed under the facts of this intellectual property litigation and its procedural status. Quittmeyer testified that he reviewed the record, focused on the work performed for the motion for contempt, and analyzed the relevant factors under Eleventh Circuit case law, to conclude that the time expended was reasonable.

DP responds that the time spent is unreasonable because the hours were excessive, redundant, or unnecessary. DP raises several specific objections which the Court will next address.

Incremental billing

DP argues that defense counsel's practice of billing in .25 hour increments (fifteen minutes) is excessive, that most attorneys bill in .10 hour increments (six minutes), and that this Court should deduct .25 hour from each of defense counsels' time entries which remain after the Court determines which are reasonable.

DP points to this Court's decision in *Mitchell Co., Inc. v. Campus,* 2009 WL 2567889 (S.D.Ala., Aug. 18, 2009), wherein the Court reduced many time entries by one-half hour because counsel billed in one-half hour increments as opposed to six minute increments. *Id*. at 19. The Court finds that billing in .25 hour increments is not reasonable in that it occludes the time truly spent on work which may generally take much less time than fifteen minutes. Accordingly, each time entry for Vines and Sykes shall be reduced by .25 hours.

Block billing

DP also argues that "block" or "group" billing makes it difficult to determine reasonable time expended because it is difficult to determine how much time was spent on each type of work in

9

the "block" entry. DP argues that the Court should reduce the entries by half or place its own estimate on the reasonableness of the tasks performed. The Court disagrees that the block billed entries should be reduced by half, but finds that a ten percent (10%) reduction in counsels' hours "adequately addresses the block billing issue". *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009, 4 (S.D.Ala. May 17, 2011).

Preparation of exhibits

DP objects to the time spent by paralegal McBride for preparing, revising and indexing the exhibits on basis that the work was clerical work for which no fee should be given. The Court agrees. In *Allen v. McClain EZ Pack of Alabama, Inc.*, 2005 WL 1926636, *3 (S.D. Ala., Aug. 8, 2005), the court explained that "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." (citation omitted). The Court gave as examples such work as "copying documents, updating pleading and correspondence binders, applying Bates numbers to documents, mailing and telefaxing correspondence" *Id*. The Court also explained that

> Work that may appropriately be performed by paralegals and billed to a client or a losing party includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence."

*Id*. quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463 (1989).

Arguably, preparing exhibits for a hearing does include some element of document production and compilation of data but in this action, the work performed by McBride appears to have been clerical. Also, her work may have been redundant to that of Vines. Accordingly, Denny's claim for paralegal hours is disallowed.

DP also objects to the time spent by Vines for preparation of the exhibits. In general, deciding which exhibits to use at a hearing and how to use them requires legal analysis. Also, the time entries indicate that Vines worked on the declarations as well as the exhibits. Therefore, to the

10

extent that Vines participated in preparing the exhibits and the declarations, his 17.5 hours are found to be reasonable.

Reasonableness of hours spent in preparing the motion for contempt, the reply, and preparing for the contempt hearing

DP argues that the hours expended for preparing the brief (74 hours), preparing the reply (27.75 hours), and in preparation for the hearing (20.5 hours), are unreasonable because of the nature of the motion as a contempt motion and because the Court advised the parties that only a half day would be afforded for the hearing. The Court disagrees. Although the hours may appear unreasonable to DP, the motion for contempt involved more than just the issue of contempt and as Denny pointed out, was more like a motion for summary judgment and required briefing the Court in the area of intellectual property law as well as contempt. This objection is overruled.

Unrelated hours

DP argues that certain time entries by Sykes were either entered before work began on the contempt motion or are unrelated. The Court reviewed the time entries and finds that they are reasonable. DP argues that the entries for August 2 and August 10, 2010 were made before the first mention of filing a contempt motion found in an August 12, 2010 entry. However, the entry for August 2, begins with "Review injunction as entered by Court. . .". (doc. 107-1, p. 8). Time spent reviewing an injunction before moving the Court to enforce it, is not unrelated. The time entry for August 10, covers email correspondence with another attorney including, among other items, "compliance with injunction". (doc. 107-1, p. 9). Time spent discussing compliance before moving the Court to enforce an injunction, is not unrelated.[4]

---

[4] The Court notes that these .75 minute and .25 minute entries contains other items which arguably may be unrelated to enforcement of the injunction, but that time will be adequately addressed by the deduction for block-billing and incremental billing as previously discussed.

DP argues that the time entries for August 17 (.25 hours), August 30 (.75 hours), and September 17, 2010 (4.0 hours) are unrelated to the motion for contempt. However, each entry specifically mentions either enforcement of the injunction or infringement: "Review and respond to email from A. Cassity regarding enforcement of copyright in new catalogs . . . ."; "Review materials and website of Backdrop Outlet in view of terms of injunction; outline issues for motion to enforce . . . "; and "Review and respond to email from A. Cassity regarding new infringement by [Back Drop Outlet]. . .".   (doc. 107-1, pp. 9, 15).

<u>Calculation of hours reasonably expended</u>

| | |
|---|---|
| Paul Sykes | 103.00 hours |
| Less .25 per entry x 55 entries | <u>13.75 hours</u> |
| Sub-Total | 89.25 hours |
| Less 10% for block billing | <u>8.92 hours</u> |
| Total | 80.33 hours |
| | |
| Brian Vines | 56.75 hours |
| Less .25 per entry x 24 entries | <u>6.00 hours</u> |
| Sub-Total | 50.75 hours |
| Less 10% for block billing | <u>5.07 hours</u> |
| Total | 45.68 hours |

<u>Calculating the lodestar</u>

"The Supreme Court elected the lodestar approach because it produces a more objective estimate and ought to be a better assurance of more even results." *Norman*, 836 F.2d at 1299.  In *Norman*, the Eleventh Circuit explained that the Supreme Court "has declared that the lodestar as

calculated in [*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983)], presumptively includes all of the twelve [Johnson] factors . . . except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency." *Norman*, 836 F. 2d at 1299 citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 3098-3100 (1986).

Multiplying the reasonable hourly rate by the reasonable hours expended, yields the following lodestar amount:

| | | | |
|---|---|---|---|
| Paul Sykes | $250.00 | x 80.33 hours | $28,082.50 |
| Brian Vines | $150.00 | x 45.68 hours | 6,852.00 |
| Total fees | | | $34,934.50 |

Adjustments to the lodestar

DP argues that this Court should adjust the lodestar downward because Denny obtained a "very limited degree of success" and points out that Denny sought $1.3 million but was awarded only $10,000.00, or as DP calculates "only .00769%" of the damages requested (doc. 108, p. 20-21). DP argues that the Court found that DP had made all reasonable efforts in good faith to comply with the injunction in regard to most of the images of the Denny's protected works. DP argues that it was found in contempt as to only one copyright registration and one trademark. DP also argues that Denny proved no actual damages. DP argues that the fee award should be reduced by a large percentage even up to 90%.

DP distinguishes the cases cited by Denny and asserts that nearly all involved either conduct warranting larger money damage awards or involved full litigation rather than a contempt proceeding. Overall, DP argues that since it consistently and quickly complied with each of Denny's requests to remove infringing material from its websites, the large attorneys' fee was avoidable. DP also asserts that Denny's own zealous pursuit of a large damage award caused its expenditure of a large amount of attorneys' fees.

The Court finds that no adjustment to the lodestar is appropriate in this action. As to a downward adjustment, the Court is not persuaded by DP's argument that comparing the monetary relief obtained by Denny to the amount of damages claimed - the $10,000 awarded as opposed to the $1.3 million sought - merits a substantial reduction in fees. In copyright and trademark litigation, intangibles such as Denny's goodwill and trade names have significant value which is difficult to quantify. Additionally, as was addressed in this contempt action, it is difficult for Denny to establish actual loss as a result of DP's violation and DP's evidence of the amount of the sales made in violation of the injunction is not evidence, of itself, of Denny's actual loss. Moreover, and importantly, the motion before the Court was for contempt for violation of an injunction entered by the Court.

Costs

Denny also seeks costs in the amount of

| | |
|---|---|
| Copying and printing | 739.30 |
| Westlaw | 2,157.55 |
| Postage and express mail | 51.88 |
| Travel costs | 523.41 |
| Total | $3,472.14 |

Denny argues that these costs were reasonably incurred as necessary to the motion for contempt. DP seeks a reduction by half of the copy and printing costs because the charges are not clear as to whether they are for the contempt motion or other work for Denny. As to the Westlaw charges, DP seeks a reduction of $503.25 on basis that it was made after filing the motion for contempt and reply, and should be disallowed.

Denny's counsel states by affidavit that Denny "requests its costs, except where redacted" and invoiced the copying and printing costs "necessary in this case". (doc. 107-1, p. 6). Previously,

Denny's counsel explained that entries not related to the motion for contempt would be redacted. However, stating that the copying and printing costs were "necessary in this case" instead of necessary for the motion for contempt, does not clarify that the charges are related to this motion. However, relying upon counsel to have exercised billing judgment, and having seen many of the copies provided in this action, the copy and printing costs in the amount of $739.30 are allowed.

As to the Westlaw charge, DP appears to argue that because these charges were incurred after the motion and reply were filed, they were not incurred for the preparation of the motion and reply. However, the Westlaw charges were incurred before the hearing on the motion for contempt and appear in an invoice along with time entries for preparation for the hearing. Accordingly, the disputed Westlaw charge of $503.25 is allowed.

Conclusion

Upon consideration of the foregoing, Denny's request for attorneys' fees, costs and expenses is **GRANTED** in part as set forth herein, and the following award is made:

| | | | |
|---|---|---|---|
| Paul Sykes | $250.00 | x 80.33 hours | $28,082.50 |
| Brian Vines | $150.00 | x 45.68 hours | 6,852.00 |
| Total fees | | | $34,934.50 |
| Costs and expenses | | | 3,472.14 |
| Total award | | | $38,406.64 |

DONE and ORDERED this 1st day of June, 2011.

                              s / Kristi K DuBose
                              **KRISTI K. DuBOSE**
                              **UNITED STATES DISTRICT JUDGE**